Sandeep Singh (CSB 321995)
STONEBRIDGE COUNSEL
1990 N. California Blvd., Suite 830
Walnut Creek, CA 94596
Ph: (925) 255-0121
Fax: (925) 322-6216
sandeep@stonebridgecounsel.com
Attorney for Defendant TERESA SU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  19-cr-486-CRB |
| Plaintiff, | |
| v. | MOTION, NOTICE OF MOTION, AND MEMORANDUM IN SUPPORT OF DEFENDANT TERESA SU'S MOTION TO SEVER |
| ROBERT ROWEN AND TERESA SU, | |
| Defendants. | Date: December 16, 2020 Time: 1:30 pm Court: Hon. Charles R. Bryer |

PLEASE TAKE NOTE that on December 16, 2020, at 1:30 pm, or as soon thereafter as the matter may be heard before the above entitled Court, Defendant TERESA SU will and hereby does move this Court for severance of her trial.

The motion is based on this notice and motion, the following memorandum of points and authorities and accompanying exhibits, and Fifth and Sixth Amendments to the United States Constitution, all other applicable constitutional, statutory and case authority, and such evidence and arguments as may be presented at the hearing of this motion.

**INTRODUCTION**

Dr. Teresa Su moves this court to sever her trial from that of her husband and co-defendant Dr. Robert Rowen on the following grounds: a joint trial would prejudice Dr. Su because (1) she would not be able to call Dr. Rowen as a witness, whereas at a separate trial, Dr. Rowen would testify in favor of Dr. Su and provide substantially exculpatory evidence; and (2) the notorious and inflammatory nature of

1

the evidence against Dr. Rowen, along with his contentious history with the IRS, would be highly prejudicial to Dr. Su.

### FACTS

Drs. Robert Rowen and Teresa Su are both charged with evading the payment of *Robert Rowen's* taxes. There is no allegation that Dr. Su evaded her own taxes. A vast majority of the government's evidence, and almost all the salient evidence, is against Dr. Rowen alone. Dr. Su played a minor and inevitable role in the alleged conduct, all of which can be explained as merely the consequence of her being married to Dr. Rowen, being a partner in a medical practice with him, and following his lead in the management of the couple's finances. In fact, Dr. Rowen plans to testify as such at Dr. Su's separate trial if this motion is granted. **Exhibit 1, Declaration of Dr. Rowen's counsel.**

Dr. Rowen, on the other hand, has a long and colorful history with the IRS and notoriety among the followers of a movement which holds certain unconventional views of the tax system. He has even co-authored a book on the subject: "*They Own It All (Including You)!:By Means of Toxic Currency.*" https://www.amazon.com/They-Own-All-Including-You/dp/1439233616 (Accessed July 9, 2020). By all accounts, Dr. Rowen is considered a leader figure in the movement and has a substantial media presence online and in print.  Notably absent from Dr. Rowen's media persona is Dr. Su. There is no evidence that she is involved in this movement.

In addition to Dr. Rowen's readily available public statements, the government has produced evidence which seems to allege that Dr. Rowen and a "Cast of Characters" held seminar(s) in the San Francisco area promoting a "tax scheme." **Exhibit 2.** There is virtually no evidence that Dr. Su was a part of these seminars or participated in the promotion of any "tax schemes" although her name is also mentioned in the IRS report along with Dr. Rowen's, presumably because of her association by marriage.

In a joint trial, the jury may convict Dr. Su based on the evidence the government intends to offer against Dr. Rowen – particularly evidence of his book, numerous videos on YouTube.com, and other publicly available statements, all of which are admissible only against him.

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

**Disparity in Key Evidence Against both Defendants.**

Dr. Rowen is alleged to owe the IRS $232,326 in back taxes – plus $1,319,409 in interest and penalties. The government alleges that with knowledge of these tax liabilities, Dr. Rowen took affirmative steps to evade their payment; and that Dr. Su aided him in that effort.

The gravamen of the government's case is that Dr. Rowen hid his assets from the government in two ways[1]: (1) by setting up a nominee entity, which received his income, purchased gold with it, and delivered the gold to Dr. Rowen; and (2) by directing patients of the couple's medical clinic to write checks (for medical services) to a gold dealer instead of the practice; the gold dealer subsequently sent Dr. Rowen the equivalent sums in gold.

Specific to Dr. Su, the government alleges the following "overt acts" which aided Dr. Rowen's alleged evasion of tax payment;[2]

1.  Dr. Su told patients to write checks for payment to a gold dealer instead of the medical practice (Par. 16 a.; Par. 20);

2.  Dr. Su filed an amended tax return with Dr. Rowen reporting a fake casualty loss (Par. 16 e.; Par. 20);

3.  Dr. Su and Dr. Rowen sued the government in U.S. district court seeking a mandamus in one case (Par. 20), and seeking to compel the government to process amended tax returns in another (Par. 16 f.);

4.  Dr. Su filed a "false" tax return claiming the property seized from Dr. Rowen in a tax levy was her separate property [3] (Par. 16 g., 16 h., 16 k., and Par. 20);

5.  Dr. Su asked a patient to cancel a check seized in a tax levy and to reissue another check (Par. 16 i., Par. 20);

---

[1] There are generally two types of 'tax evasion:' (1) where a taxpayer underreports his or her tax *before* the tax is assessed, and (2) where a taxpayer evades the payment of taxes *already* assessed. This case involves the latter. Specifically, the government alleges that Drs. Rowen and Su, knowing that Dr. Rowen had an unpaid tax assessment, took affirmative steps to evade its payment.

[2] Citations in this section refer to paragraphs in the Superseding Indictment filed January 16, 2020.

[3] In March 2014, the IRS seized more than $700,000 in gold and silver coins from the couple's primary residence. The government deemed the entire amount seized to be Dr. Rowen's property and accordingly applied all of it to his account. Dr. Su allegedly filed a tax return claiming a part of the seizure as her separate property and reporting the gain (auction value minus her basis).

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

3

6. Dr. Su filed "false" tax returns which falsely reported Dr. Rowen and Dr. Su's respective share of "income, deductions, and credits" from the partnership (Par. 16 l.; Par. 20);

7. Dr. Su made cash payments for her personal credit card, which included purchases for business expenses (Par. 16 m.; Par. 20);

To support these allegations, the government has produced thousands of pages of documentary evidence as well as Memoranda of Interviews with potential witnesses, marked as US-00001 – US-44290. A vast majority of this evidence pertains to Dr. Rowen alone. For example, of the approximately thirty (30) Memoranda of Interviews of key witnesses produced by the government, almost none concern Dr. Su in any meaningful way.[4] **Exhibit 3, Declaration of Counsel**. Furthermore, the government produced thousands of pages of documents obtained from the couple's CPA, Mark Payne, marked as US-33085 – US-40620. These documents included dozens of emails between Dr. Rowen, his attorneys, and his CPA. These emails show that virtually all of the communication concerning Dr. Su's tax matters was with Dr. Rowen alone. Dr. Su was not copied on any of the emails discussing the complained of tax matters. *See* **Exhibit 4.** In fact, Dr. Su had <u>no</u> email communication with the CPA or the attorneys. She was not even copied on any of the emails between Dr. Rowen and his CPA and attorneys.

For example, Dr. Su is accused of filing a false tax return claiming that the seized gold and silver was her separate property, and not Dr. Rowen's property. Superseding Indictment, Par. 16 g., 16 h., 16 k., and Par. 20. The evidence obtained by the government from the couple's CPA, Mark Payne, shows that Dr. Rowen *alone* directed the CPA to take this position on behalf of Dr. Su, and that Dr. Su had nothing to do with this tax position. **Exhibit 4.** In this email chain between Dr. Rowen, his attorney Moskowitz, and his CPA, Dr. Rowen is directing the CPA to allocate the seized property to Dr. Su, and states that he is "NOT happy to evenly split the IRS seizure." Notably absent from the email chain is Dr. Su. In fact, almost all of the communication produced by the government concerning the couple's joint and separate tax issues was with Dr. Rowen *alone*. Dr. Su had no input, and was not copied on, any of

---

[4] There is some discussion of Dr. Su's role in the medical practice in interviews of employees of the practice. Further, one witness (a former patient of the practice) recalls that Dr. Su called her to "tell [her] about the [tax levy] incident." US-9909. In the broader context, this witness appears to indicate that Dr. Su called her to request reissuance of a seized check in the amount of $704. The remaining witness statements were almost exclusively about Dr. Rowen.

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

the emails concerning her own or the medical practice's tax matters. **Exhibit 3.** Mr. Payne's witness statement to the government further supports this narrative. *See* **Exhibit 5, Memorandum of Interview of Mark Payne.** In pertinent part, Paragraph 27 of the interview memo reads:

> Regarding the seizure of gold coins and assets by the IRS in March of 2014, Payne's initial draft presented the untitled assets as a 50-50% split between ROWEN and SU because of community property laws. [Rowen/Su's tax attorney] Moskowitz did not like the 50% split and said the property was mostly Su's. **Payne relied upon ROWEN's comments that the gold coins belonged to SU in order to prepare the 2014 tax returns for ROWEN and SU.**

(Emphasis supplied).

At Dr. Su's separate trial, Dr. Rowen will testify and confirm the substance of these statements, removing any doubt as to who was responsible for the complained of tax positions. Similarly, Dr. Rowen's testimony will explain Dr. Su's intent behind each of the other alleged 'overt acts' committed by Dr. Su. Specifically, his testimony would show either that Dr. Su was acting pursuant to his instructions and without knowledge of the tax consequences of her actions, or that there was otherwise a non-tax motive for her conduct.

Lastly, evidence shared by the government suggests that Dr. Rowen is a leading figure in a movement which disputes the constitutionality of the tax system and the legitimacy of Federal Reserve Notes. As discussed *supra,* Dr. Rowen is the co-author of a book on the subject and allegedly promoted "tax schemes" in seminars held in San Francisco. The evidence produced by the government does not include any evidence of Dr. Su's involvement in this movement.

## ARGUMENT

Under Rule 8(b) of the Federal Rules of Criminal Procedure, the government may charge two or more defendants in the same indictment if "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. Pro. 8(b). Even where joinder is technically proper, Rule 14 gives the Court discretion to order separate trials if the joinder appears to prejudice a defendant. Fed. R. Crim. Pro. 14.

The Ninth Circuit has held that "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence…. [T]he determination [is

left] to the sound discretion of the district courts." <u>United States v. Reese</u>, 2F.3d 870, 891 (9th Cir. 1993) (quoting <u>Zafiro v. United States</u>, 1113 S.Ct. 933, 938-39 (1993)). However, "it is well established that in the federal system there is a preference for joint trials where the defendants have been jointly indicted" because joint trials "promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." <u>United States v. Hernandez-Orellana</u>, 539 F.3d 994, 1001 (9th Cir. 2008); <u>Zafiro</u>, 506 U.S. at 537).

### 1. **Dr. Su's Need for Exculpatory Evidence**

In this case, Dr. Su will be prejudiced by a joint trial because she will not be able to call Dr. Rowen as a witness, who is likely to assert his Fifth Amendment privilege against self-incrimination at trial. **Exhibits 1 and 3.** Dr. Rowen otherwise intends to testify favorably for Dr. Su at a separate trial, and his testimony would be substantially exculpatory. <u>Id</u>.

When the reason for severance is the need for a co-defendant's testimony, the defense must show that: (1) the co-defendant would be called as a witness at the severed trial; (2) the co-defendant would in fact testify; and (3) the testimony would be favorable or exculpatory to the moving party.[5] <u>United States v. Pitner</u>, 37 F.3d 1178, 1181 (9th Cir. 2002); <u>United States v. Mariscal</u>, 939 F.2d 884, 886 (9th Cir. 1991); <u>United States v. Seifert</u>, 648 F.2d 557, 563 (9th Cir. 1980) (trial court erred in refusing to sever trials where defendant was "denied the right to present important exculpatory evidence"); <u>United States v. Reese</u>, 2F.3d 870, 892 (9th Cir. 1993); <u>United States v. Vigil</u>, 561 F.2d 1316 (9th Cir. 1977) (holding that trial court erred in refusing to sever trial, thereby depriving a co-defendant exculpatory evidence). A co-defendant's testimony is not "substantially exculpatory" if it refutes only portions of the government's case and leaves unaffected other evidence sufficient to convict. <u>Mariscal</u> 939 F.2d at 886. In deciding whether to grant a motion for severance, the district court must consider the weight and credibility of the proposed testimony and the economy of severance. <u>United States v. Hernandez</u>, 952 F.2d 1110, 1115 (9th Cir. 1991).

---

[5] In addition, the movant has to show that the co-defendant's testimony would not be cumulative; but that is not at issue here.

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

In this case, Dr. Rowen intends to testify favorably for Dr. Su at a separate trial, but is unlikely to testify at a joint trial. **Exhibit 1.** The key parts of Dr. Rowen's testimony would establish the following: Dr. Rowen managed the couple's finances during their marriage, including Dr. Su's separate finances; Dr. Rowen handled all matters pertaining to the couple's taxes, including Dr. Su's taxes; when Dr. Rowen instructed Dr. Su to engage in conduct complained of in the indictment, Dr. Su did not know she was violating any civil or criminal laws. For example, some of the complained of conduct (e.g. filing of lawsuits against the government and filing of "false" tax returns) was based on advice from the couple's attorneys and tax representatives – with whom only Dr. Rowen communicated on the couple's behalf. Thus, only he can testify as to Dr. Su's then existing mental state and intentions. *See* **Exhibit 1,** Declaration of Robert Rowen's Counsel.

Dr. Rowen's proffered testimony is corroborated by evidence shared by the government, which shows Dr. Rowen solely communicating with the CPAs and tax attorneys on Dr. Su's behalf, *including specifically discussing tax positions alleged to be 'false' in the Superseding Indictment,* all by himself. Dr. Su was not copied on any of these emails. There is little indication she even knew that Dr. Rowen was taking the complained of position on her tax returns. Further, there is no indication she was involved in the couple's finances beyond performing ministerial duties at her husband's direction.

In light of the foregoing, undersigned counsel intends to call Dr. Rowen, and possibly only Dr. Rowen, at Dr. Su's trial. Because the government's allegations involve conduct which is not criminal *per se* but requires specific intent, only Dr. Rowen's testimony could establish that Dr. Su did not have the requisite specific intent even if she did the things she is accused of. Dr. Rowen's proffered testimony, if believed by a jury[6], would exonerate Dr. Su *even if there is no doubt she engaged in the complained of conduct*, because his testimony would negate any "willfulness" to aid in the evasion of taxes.

---

[6] Whether Dr. Rowen's testimony in favor of Dr. Su would be biased is for the jury to decide. Potentially biased testimony alone does not warrant denial of a severance motion. United States v. McCord, 2016 WL 8669900 (citing United States v. Cobb, 185 F.3d 1193, 1197-1200 (11th Cir. 1999). The Court merely needs to find that the proffered evidence is not so incredible that no jury would give it any weight. McCord at 8. In this case, in light of the government's lack of overwhelming evidence against Dr. Su, a jury cannot discount an innocent explanation of her conduct. Further, government's own evidence corroborates Dr. Rowen's proffered testimony that he alone handled the couple's finances. *See* **Exhibit 4.**

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

Furthermore, Dr. Rowen's testimony can establish that he convinced Dr. Su of the validity of the various unconventional tax theories he ardently believes in; and that Dr. Su, to the extent she knew of his actions, went along with it thinking the couple's actions were legal, thus negating willfulness as alleged by the government. *See* Cheek v. United States, 498 U.S. 192 (1991). In sum, Dr. Rowen's testimony would exonerate Dr. Su.

In granting a motion for severance in United States v. Reyes, 2007 WL 963246, the Honorable Charles R. Bryer reasoned that "…an alleged co-conspirator is in a unique position to provide exculpatory testimony on behalf of another defendant." That is precisely the case here. Dr. Su's husband is in a unique position to provide testimony which would exonerate her. Thus Dr. Su's motion for severance should be granted.

Lastly, this case is neither long nor complex so considerations of judicial economy do not weigh against severance.

> …[J]udicial economy will always weigh against a severance because one trial is always more economical than two. As such, that factor cannot become a talisman in the severance analysis. Judicial economy becomes relevant where the exculpatory value of the proffered testimony is marginal or cumulative of other evidence; where the government's proffered evidence of guilt is overwhelming; where the proffered co-defendant's testimony is so incredible that a jury would give it no or little weight; and/or where the trials are expected to be long and/or complex.

United States v. McCord, 2016 WL 8669900.

In this case, the value of the proffered evidence is significant for Dr. Su. It in fact negates "willfulness" – a necessary element of the crime. The government's proffered evidence against Dr. Su is insignificant and can be negated by Dr. Rowen's testimony. As such, severance of trials appropriate.

### 2. **Spillover Evidence**

"[E]vidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty." Zafiro, 506 U.S. at 539. While a great disparity of evidence may be sufficient to permit a severance in certain cases, the focus is on 'whether the jury can reasonably be

8

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

expected to compartmentalize the evidence as it relates to separate defendants in light of its volume and limited admissibility." U.S. v. Gains, 563 F.2d 1352, 1355 (9th Cir. 1977).

In this case, there is a serious risk that the great disparity in evidence may lead to a prejudicial spillover effect. While the case is not complex, the colorful and highly inflammatory evidence against Dr. Rowen, particularly his involvement in the fringe tax movement and authorship of a book on the subject may lead a jury to weigh this evidence against Dr. Su. This risk is further amplified by the fact that Drs. Rowen and Su are married. A jury may view them as one joint unit and apply *all* evidence in the case against them both. *See* United States v. Garcia, 151 F.3d 1243, 1246 (9th Cir. 1998) ("[t]here can be no conviction for guilt by association").

Furthermore, evidence of Dr. Rowen's creation of a nominee entity to allegedly funnel over $3 million in dollars gold – and photographic evidence of gold being taken away in carts – would be highly inflammatory and otherwise inadmissible against Dr. Su. Dr. Su had nothing to do with the nominee entity and none of her income flowed through the nominee entity. Further, none of the gold seized belonged to her and the government applied all of it to Dr. Rowen's account.

A jury may not be able to compartmentalize the inflammatory evidence against Dr. Rowen. Therefore, severance of trials is appropriate.

## CONCLUSION

In light of the foregoing, Dr. Su respectfully requests that her trial be severed from Dr. Rowen's.

Dated: September 8, 2020                            Respectfully submitted,

*/s/ Sandeep Singh*
Sandeep Singh
Attorney for Dr. Teresa Su

9

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
Defendant Teresa Su's Motion to Sever

# United States v. Rowen et al.

# Case No. 19-cr-486-CRB

# Exhibit 1

Sandeep Singh (CSB 321995)
STONEBRIDGE COUNSEL
1990 N. California Blvd., Suite 830
Walnut Creek, CA 94596
Ph: (925) 255-0121
Fax: (925) 322-6216
sandeep@stonebridgecounsel.com
Attorney for Defendant TERESA SU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  19-cr-486-CRB |
| Plaintiff, | DECLARATION OF COUNSEL MARC X. CARLOS IN SUPPORT OF DEFENDANT TERESA SU'S MOTION TO SEVER |
| v. | |
| ROBERT ROWEN AND TERESA SU, | Date: October 7, 2020 |
| Defendants. | Time: 1:30 pm |
| | Court: Hon. Charles R. Bryer |

DECLARATION OF COUNSEL

I, MARC X. CARLOS, declare as follows:

1. I am an attorney licensed to practice law in the State of California and the United States District Court, Northern District of California.

2. I am attorney of record for Defendant, ROBERT ROWEN, in the above referenced matter.

3. At present, I believe that Dr. Rowen will not testify at any trial in which he is a defendant.

4. Based on my discussions with my client, ROBERT ROWEN, I believe it would be his desire to testify at the trial of Dr. Su if such trial were separately held. I also believe that his testimony will be highly exculpatory for Dr. Su. Further, I believe my client will testify at Dr. Su's trial regardless of the order of trials.

5. Based on my conversations with ROBERT ROWEN, he would testify, *Inter alia,* to the following facts at Dr. Su's trial:

   a. I was solely in charge of our personal and medical practice's finances, including the filing of partnership tax returns. While Dr. Su helped me at the practice by doing basic bookkeeping and receiving payments for services, it was done at my direction and according to my instructions.

   b. While Dr. Su was aware that I owed back taxes to the IRS, I had informed her that I had hired representatives to assist in resolving the debt. Dr. Su took no step to help me "hide" my assets. To her knowledge, I was litigating the amount and validity of the taxes in court and through administrative proceedings.

   c. Since our marriage in 2001, I have solely managed my own and Dr. Su's finances and tax filing requirements, including management of her separate property. Dr. Su, from the beginning of our marriage, has been uninterested and uninvolved in our finances and tax filing requirements. I, with advice from tax professionals, drafted and filed all tax returns for the practice. Dr. Su often did not even know when taxes were due and whether or not I had filed them. She was not copied on my communication with tax professionals regarding our taxes.

   d. I filed the two lawsuits against the United States on behalf of both myself and Dr. Su to enforce our rights against the government. Dr. Su was minimally aware of the substance of the lawsuits was not involved in any meaningful way – although she was aware that I had filed them. I *solely* communicated with all relevant parties, including all legal advisors, and made all the necessary decisions. Dr. Su generally did not ask very many questions and trusted me to enforce our rights. To the best of her knowledge, I was filing lawsuits to enforce our constitutionally protected rights.

e.  When the IRS seized property from our house pursuant to a tax levy, I retained a prominent tax law firm, Moskowitz LLP, to represent us both. We took all future steps in accordance with guidance from Moskowitz. Moskowitz referred us to his own return preparer, who prepared our tax return claiming that the seized property was Dr. Su's separate property. Dr. Su neither asked me nor Moskowitz LLP, nor the return preparer for that matter, to claim this position. I was solely responsible, with Moskowtiz's advice, for taking the position that the seized property was Dr. Su's property alone.

f.  When the IRS raided our medical practice and seized our property, I had an active administrative case pending with the IRS to assist in resolving the outstanding tax debt. I had representatives from Wall & Associates Inc. helping me with negotiating the tax debt. I also had a lawsuit pending in the Northern District of California to compel the IRS to process our amended tax returns – which it had (in my view) unlawfully failed to do. Thus, I convinced Dr. Su that the levy was illegal and unconstitutional and instructed her to contact the patient to place stop-payment on the seized check and to issue a new one.

g.  It is our medical practice's standard policy to dispense with any cash received by paying bills. This is done to dispense with cash as soon as possible – because I do not believe that "federal reserve notes" are lawful money. I do not believe, based on decisions by the United States Supreme Court, that the "Federal Reserve Notes" are valid constitutional "legal tender" as they stand in clear violation of the decisions in the legal tender cases, which determined the requirements and conditions for "legal tender." Thus, I will testify that Dr. Su had no tax motive in paying bills with cash.

h.  I often prepared all tax related communication with the IRS on behalf of Dr. Su and myself – including communication which she signed and/or forwarded to the IRS.

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB

Declaration of Counsel

U.S. v. Rowen et al, Exhibit 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness, I could and would competently testify thereto.

Executed on this 20th day of July, 2020, in San Diego, California.

Marc X. Carlos, Esq.
Attorney for Defendant Dr. Rowen

# United States v. Rowen et al.

# Case No. 19-cr-486-CRB

# Exhibit 2

# Rowen's Cast of Characters

1.  Ronald P. MacDonald      ███████      **Co Promotor**

2.  Cindi R. Soliz      ███████      **Frm Employee**

3.  Siota H Belle MD      ███████      **Frm Preparer**

4.  Anja M. Scitz      ███████      **Employee**

5.  Mary Grace      **Co Promotor**

6.  Tim D. Brewer      ███████      **CPA**

7.  Elizabeth Coulson      **Employee**

8.  Eve L.      **Empoyee?**

9.  Shre Wilson      **Empoyee**

10. Sheri Rowen      **Sister**

11. William Pawluk MD      **?**

12. Longevity Resources      **?**

13. Jennifer Jones      **?**

14. Liz Wheeler      **?**

15. Mark Zila DDS (wire) 3/17      **?**

16. Michael Pyle (wire) 3/22      **?**

17. Devin Narula (wire)      **?**

18. K Park (wire)      **?**

INTERNAL REVENUE SERVICE
Attn: D. Barber 2702-1320
4330 Watt Ave SA-1305
Sacramento  CA  95821



**DATE:** 6/17/2013

**TO:**      Lead Development Center

**PHONE:**

**FAX:**     877 477 9135

**FROM:** David J. Barbearo
Revenue Officer

**REMARKS:**   Revised and amended Form 14242 attached. Please note,
Promotors Robert Rowen and Ronald MacDonald are planning a seminar on
August 10-11, 2013 at the San Francisco, CA Marriot Hotel.

Please see additional four (4) pages of evidence attached.

Questions should be directed to ATAT Revenue Officer Barbearo @ 916 974-
5292

Fax Number is (916) 974-5903.      Thank You.

Number of Pages (Including Cover Sheet):   7

**PLEASE DELIVER THIS FAX IMMEDIATELY**

NOTE:  This communication is intended for the sole use of the individual to whom
it is addressed and may contain information that is privileged, confidential, and

| **Report Suspected Abusive Tax Promotions or Preparers** | OMB Number 1545-2219 |
|---|---|

Use Form 14242 to report a suspected abusive tax avoidance scheme and/or tax return preparers who promote such schemes. More information about tax avoidance schemes is available at www.irs.gov/scams.

Answer the following questions as accurately as possible. Fields on this form have been designed to expand as additional information is entered.

**Mail the completed form to:**
Internal Revenue Service
Lead Development Center
Stop MS5040
24000 Avila Road
Laguna Niguel, CA 92677

You may also **FAX** your completed form to (877) 477-9135.

**1. a. Describe the suspected tax scheme being promoted**
Robert Rowen and Ronald MacDonald are promoting the exchange of Federal Reserve Notes (business cash income) for gold coins and deducting the purchase of gold as a legitimate business expense thus reducing or eliminating a businesses taxable income. See Exhibits 1-6 attached hereto. The Promoters are holding a tax seminar August 10-11, 2013 at the San Francisco, CA, Marriott Hotel.

| b. Was the tax scheme promoted as a "new" legal tax strategy | ☒ Yes | ☐ No |
|---|---|---|

**2. How did you become aware of the promotion or promoter** *(Internet, email, TV, flyer, newspaper, magazine, friend, relative, etc.).*
Review of Taxpayers business and personal tax returns indicate large purchases of gold as deductions without acknowledging the gold as a retained asset on the tax return. Summonsed information to a Gold Dealer revealed an email from taxpayer promoting his tax seminar to be held August 10-11, 2013 at the San Francisco, CA Marriott.

| **3. When did you first learn about the tax promotion** *(mm/dd/yyyy)* | 07/09/2013 |
|---|---|

**4. Promoter Information** *(If more than one promoter is involved, provide information on all promoters)*

Name of promoter(s)
Robert Jay Rowen MD, Terresa Su, MD and Ronald MacDonald, Financial Advisor / Author

Social Security Number (SSN) of promoter(s)
██████████

Mailing address of promoter(s)
██████████

Email address of promoter(s)
www.doctorrowen.com / ██████████   www.newpeopleorder.com

Telephone number of promoter(s)
██████████

Headquarter location of promoter(s)
Santa Rosa, CA and Guerneville, CA

**5. Describe the function/role of each person involved in the promotion**
Doctor Robert Jay Rowen and Doctor Teresa Su actively recruit others to learn their tax avoidance secrets (exchanging cash for gold and the use of alter ego corporations). They distribute emails with distorted information in an effort to entice others to use their tax avoidance techniques and present seminars to select audiences featuring Ronald MacDonald as an author of tax avoidance techniques.

**6. Do you have copies of any promotional material supplied by the promoter**
☒ Yes   ☐ No   If **YES**, attach copies of the promotional material to your completed form

**7. a. What was the cost for the promotional material**

b. Did the cost include

| A monthly service fee | ☐ Yes | ☐ No | ☒ Unknown |
|---|---|---|---|
| An audit protection fee | ☐ Yes | ☐ No | ☒ Unknown |

**8. How did you obtain the promotional information** *(Internet, mail, email, telephone solicitation, professional acquaintance, etc.).*
IRS Collection Summons and download from website @ www.newpeopleorder.com

| 9. a. Did the promoter hold any seminars or meetings to promote the tax scheme | ☒ Yes | ☐ No | ☐ Unknown |
|---|---|---|---|
| b. If you answered YES in 9a, what was the cost associated with attending the seminar or meeting | | | unknown |
| c. Where was the seminar or meeting held | unknown | | |
| d. When was the seminar or meeting held *(mm/dd/yyyy)* | | | |
| e. Did you personally attend any seminar or meeting associated with the promotion or promoter | | ☐ Yes | ☐ No |

Form **14242** (Rev. 2-2013)  Catalog Number 57652G          www.irs.gov          Department of the Treasury - Internal Revenue Service

10. How is the promoter involved in the promotion *(Describe promoters involvement)*
See number #5 above.

11. Who is the target group of the promotion *(Describe industry or type of taxpayer, i.e. nurse, policeman, home business, etc.)*
Doctor Rowen promotes alternative medicine online. The target of his promotion is anyone connected with him or his work, mostly the medical profession and small business owners.

| 12. a. Are you aware of any similar promotions in your area | ☐ Yes | ☒ No |
|---|---|---|

b. If **YES**, describe the other promotions and any similarities they have to this promotion

| 13. Is the promotion still being advertised | ☒ Yes | ☐ No |
|---|---|---|

14. Describe the tax benefits of the promotion *(Provide any information used to explain the tax benefits of the promotion)*
Taxpayer creates an alter ego LLC. The business grosses about $500,000 annually. On the tax return, the Taxpayer does not list any employees for the LLC (including himself) but deducts a sum equal to the net income of the LLC as "US$ FR LWFL MNY GLD CN", thus reducing the net income of the LLC to zero. The purchase of gold is not listed on the LLC tax return as an asset. The abbreviation referenced above is translated as "US federal reserve notes exchanged for lawful money gold coin. Also use of alter ego corporations to conceal ownership and income.

15. Describe the geographic scope of the promotion. For example, is it restricted to a small area, nationwide, or worldwide
Worldwide via the internet and email.

16. Do you know of any tax preparers completing returns for investors or promoters based upon this promotion
☒ Yes    ☐ No

If **YES**, provide the following information *(if available)*  *(If more than one preparer is involved, provide information on all preparers)*

Name of preparer(s)

17. Did you have any private/personal conversations with the promoter/accountant/return preparer/associate
☐ Yes    ☒ No

If **YES**, provide the following information *(if available)*

With whom did you have a conversation

What did they say during the conversation

Where did this conversation take place

When did this conversation take place *(mm/dd/yyyy)*

When this conversation took place, if anyone else was present, list their names

18. a  What is your current relationship with the promoter(s)
Revenue Officer / open investigation SBSE ATAT tax collection

| b. Did you have personal/telephone contact with any of the promoters | ☐ Yes | ☒ No |
|---|---|---|
| 19. Do you know any individuals/businesses that have purchased or used the promotion | ☒ Yes | ☐ No |

Form **14242** (Rev. 2-2013) Catalog Number 57662G          www.irs.gov          Department of the Treasury – Internal Revenue Service

U.S. v. Rowen et al, Exhibit 2
US-41411

If **YES**, provide their names
Family members / still under investigation

| | | |
|---|---|---|
| 20. a. Did you purchase and use the "promotion package" | ☐ Yes | ☒ No |
| b. If **YES**, have you amended your tax returns | ☐ Yes | ☐ No |

**Contact information** *(Providing your contact information is optional, but will be helpful if we have questions, and will allow us to acknowledge receipt of the referral.)*

| Name | Enter the date you completed this form |
|---|---|
| David J Barbearo, ATAT Revenue Officer | 07/17/2013 |

Mailing address
4330 Watt Ave MS SA 1305 Sacramento, CA 95821

| Telephone number | Email address |
|---|---|
| 916 974 5292 | david.j.barbearo@irs.gov |

**Privacy Act and Paperwork Reduction Act Notice**

This information is solicited under authority of 5 U.S.C. 301, 26 U.S.C. 7801 and 26 U.S.C. 7803. The primary purpose of this form is to report violation of the Internal Revenue laws.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal non-tax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

Providing this information is voluntary. Not providing all or part of the information will not affect you. Providing false or fraudulent information may subject you to penalties.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file this form will vary depending on individual circumstances. The estimated average time is: **Preparing and sending the form to the IRS should involve 10 minutes.** If you have comments concerning the accuracy of the time estimate or suggestions for making this form simpler, we would be happy to hear from you. You can write to the IRS at the address listed in the Instructions.

Form **14242** (Rev. 2-2013) Catalog Number 57652G          www.irs.gov          Department of the Treasury - Internal Revenue Service

U.S. v. Rowen et al, Exhibit 2

US-41412

# United States v. Rowen et al.

# Case No. 19-cr-486-CRB

# Exhibit 3

Sandeep Singh (CSB 321995)
STONEBRIDGE COUNSEL
1990 N. California Blvd., Suite 830
Walnut Creek, CA 94596
Ph: (925) 255-0121
Fax: (925) 322-6216
sandeep@stonebridgecounsel.com
Attorney for Defendant TERESA SU

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>ROBERT ROWEN AND TERESA SU,<br><br>  Defendants. | Case No.: 19-cr-486-CRB<br><br>DECLARATION OF COUNSEL IN SUPPORT OF DEFENDANT TERESA SU'S MOTION TO SEVER<br><br>Date: December 16, 2020<br>Time: 1:30 pm<br>Court: Hon. Charles R. Bryer |

## DECLARATION OF COUNSEL

I, Sandeep Singh, declare as follows:

1. I am an attorney licensed to practice law in the State of California and the United States District Court, Northern District of California.

2. I am the attorney of record for Defendant, TERESA SU, in the above referenced matter.

3. The jury trial date in this proceeding is scheduled for February 22, 2021 with codefendants Dr. Robert Rowen and Dr. Teresa Su.

4. At Dr. Su's trial, I intend to call Dr. Robert Rowen to testify in favor of Dr. Su.

5. Based on my discussions with Dr. Rowen's attorney, Marc X. Carlos, Dr. Rowen desires to testify at Dr. Su's trial and would do so willingly. However, he is unlikely to testify at any trial in which he is a defendant.

6. In my professional judgement, Dr. Rowen's testimony would be substantially exculpatory for Dr. Su.

7. Dr. Rowen's testimony is indispensable for Dr. Su because only he (Dr. Rowen) can testify as to Dr. Su's intent behind every conduct complained of in the Superseding Indictment. Without his testimony, Dr. Su would not be able to establish that her conduct was not "willful." With his testimony, Dr. Su can establish that she simply followed Dr. Rowen's lead on all tax and financial matters and was not fully aware of his tax situation.

**Disparity in Government's Evidence Against Defendants**

8. The government has provided defense with six compact disks ("CDs") containing approximately 44,290 documents, which includes Jencks Act witness interview statement. I have personally reviewed all pertinent discovery material and believe that less than 10% of it pertains to Dr. Su. Furthermore, almost all of the thirty (30) Jencks Act witness interviews shared by the government concern only Dr. Rowen. Only one Jencks Act witness statement directly pertains to Dr. Su in that the witness, a former patient of Dr. Su, implies that Dr. Su called her requesting a stop-payment on a check in the amount of $704 seized by the government and requesting a new check.

9. The government may also introduce evidence of Dr. Rowen's publicly available statements regarding his unconventional views of tax laws, e.g. his book titled "*They own it all! (Including you!): By Means of Toxic Currency,*" and his numerous videos on the topic available on YouTube.com. There is no such evidence available against Dr. Su to the best of my knowledge.

10. The government has produced thousands of pages of records and communication obtained from Dr. Rowen/Dr. Su's CPA, Mark Payne. I have personally reviewed a substantial sampling of the emails produced by the government. All of the email communication with Mr. Payne regarding Dr. Su's joint and separate tax matters is with Dr. Rowen alone – including emails discussing

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB

Declaration of Counsel in Support Defendant Su's Motion to Sever

2

tax position alleged to be "false" by the government. Dr. Su is not copied on the emails – even when the tax matters concerned her alone. A sample email chain, showing a discussion of Dr. Su's taxes between Mr. Payne and Dr. Rowen is attached to the Motion to Sever as **Exhibit 4.**

**Dr. Rowen's Exculpatory Testimony.**

11. I have communicated with Dr. Rowen's attorney, Mr. Marc X. Carlos. Based on my communication with Mr. Carlos, I believe that Dr. Rowen will invoke his Fifth Amendment privilege and decline to testify at a trial in which he is a defendant.

12. However, Dr. Rowen is willing to testify at Dr. Su's separate trial, regardless of the order of trials. Based on my discussions with Mr. Carlos, and Mr. Carlos' Declaration, it is my firm belief that Dr. Rowen's testimony would be substantially exculpatory for Dr. Su.

13. Dr. Rowen's testimony would include the following in response to each factual allegation in the Superseding Indictment:

> **Allegation:** Dr. Su helped Dr. Rowen conceal his assets.
>
> **Dr. Rowen's Proffered Testimony:** Dr. Rowen was in charge of the couple's finances and tax compliance matters, including the filing of their partnership tax returns; Dr. Su was not fully aware of the extent of Dr. Rowen's tax liabilities; and Dr. Su was largely uninvolved in the couple's finances.
>
> **Allegation:** Dr. Su helped Dr. Rowen evade his taxes by filing joint partnership tax returns which were false.
>
> **Dr. Rowen's Proffered Testimony:** Dr. Rowen <u>exclusively</u> dealt with all tax return preparers and other tax professionals in meeting the medical practice's tax requirements and their personal income tax compliance requirements. Dr. Su was uninvolved and uninterested in the partnership tax matters and her own tax matters.

**Allegation:** Dr. Su, along with Dr. Rowen, filed two lawsuits against the United States related to their tax matters, intending to impede the collection of taxes.

**Dr. Rowen's Proffered Testimony:** Dr. Rowen was solely responsible for the filing of lawsuits against the government on the couple's behalf; and Dr. Su was not fully aware of their substance.

**Allegation:** Dr. Su falsely claimed that property seized from the couple's home pursuant to a tax levy was her separate property, and not marital property.

**Dr. Rowen's Proffered Testimony:** Dr. Rowen was solely responsible for communicating with tax professionals to seek their advice on the tax positions taken. It was Dr. Rowen who took this position pursuant to advice from a prominent San Francisco Tax Law firm – with whom Dr. Rowen exclusively communicated on the couple's behalf.

**Allegation:** Dr. Su instructed patients of their medical practice to write checks payable to their "gold dealers" instead of the practice.

**Dr. Rowen's Proffered Testimony:** Dr. Rowen insisted on transacting in "lawful money," which he believes is gold, and not currency. Dr. Rowen believes currency to be "toxic" and a means of controlling the population. Dr. Su simply followed his instructions in instructing patients to write checks to the gold dealers and had no tax motive in so doing.

**Allegation:** Dr. Su made cash payments for credit card bills.

**Dr. Rowen's Proffered Testimony:** it was the medical practice's standard practice to pay certain bills with cash, in order to quickly dispense with "toxic" currency, and there was no tax motive in so doing.

**Allegation:** Dr. Su instructed at least one patient to cancel a check seized by the government in a tax levy and to reissue a new check.

**Dr. Rowen's Proffered Testimony:** Dr. Rowen had hired a law firm, Wall & Associates Inc., who had a pending case with the IRS to resolve his tax debts. He believed that the tax levy was illegal because there was an active case regarding the tax liability, and that he convinced Dr. Su that levy was not lawful. He further instructed Dr. Su to contact the patient to request a new check.

14. The above statements are paraphrased from Dr. Rowen's proffered testimony in Mr. Carlos Declaration, attached to the Motion to Sever as **Exhibit 1**, as well as from my understanding of his testimony after discussions with his counsel.

15. In my professional judgment, Dr. Rowen will have no basis to resist testifying at Dr. Su's trial if he is either acquitted or convicted at trial.

I declare under penalty of perjury that the foregoing is true and correct and if called as a witness, I could and would competently testify thereto.

Executed on this 10th day of September, 2020, in Walnut Creek, California.

Dated: 9/8/2020

SANDEEP SINGH
Attorney for Defendant Dr. Su

# United States v. Rowen et al.

# Case No. 19-cr-486-CRB

# Exhibit 4

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Robert Rowen <drrowen@att.net> |
| **Sent:** | Friday, October 09, 2015 11:32 AM |
| **To:** | Anthony Diosdi |
| **Cc:** | Joe Bray; CFP(R) Mark W. Payne EA; Steve Moskowitz; Kristen Ritchie; Jessica Herrera |
| **Subject:** | Re: 2014 Draft Returns |

Terri sill go with the 20K as basis. It was an inherited antique family heirloom. Actually it was priceless to her. To someone else, it might be worth less. It was a tragic loss to her, since it came from family, but she is a very spiritual person so she is able to take it in stride as part of this corrupt material world.
Yes, cash was community property. Some was in the office so it would be joint to whatever extent you intend to allocate office income for that year, and the cash in the house was used for daily living expenses.

The old non-gold, non-silver coins have no basis other than the face value. The gold and silver coins have an obvious basis of the gold/silver content in and around 1999. The topaz is community property. Necklace, as stated is hers. I think the accountant did an acceptable basis for the gold and silver coins, and I am providing the basis for the rest of the coins based on face value except for the old Spanish Pilar as follows:
The basis of the old Spanish Pillar is about $200. This is what the coin looked like:
http://www.ebay.com/itm/CAROLUS-III-DOS-MUNDOS-8-REALES-1765-MEXICO-MF-SPANISH-COLONIAL-/111723543609

That should wrap it up on the seizure. Please let me know if you have any additional questions.
And please let us know about accounting for her as a sole prop vs. the partnership you are creating as she is paying all withholding taxes from her own EIN.
R

On Oct 9, 2015, at 11:16 AM, Anthony Diosdi <adiosdi@moskowitzllp.com> wrote:



1

U.S. v. Rowen et al, Exhibit 4

US-33091

Anthony

---

**From:** Robert Rowen [mailto:drrowen@att.net]
**Sent:** Wednesday, October 07, 2015 11:04 PM
**To:** Joe Bray
**Cc:** CFP(R) Mark W. Payne EA; Steve Moskowitz; Anthony Diosdi; Kristen Ritchie
**Subject:** Re: 2014 Draft Returns

I have forwarded the new partnership EIN request to you.

I am NOT happy to evenly split the IRS seizure. I could potentially see a split such as 80-20 or 90-10, but not 50-50. How do you explain me having a 50% interest in an antique family jade necklace heirloom?
R


Robert Jay Rowen, MD
drrowen@att.net


www.docrowen.com
http://www.youtube.com/user/RobertRowenMD
https://www.facebook.com/DrRobertJRowen



" The doctor of the future will no longer treat the human frame with drugs, but rather will cure and prevent disease with nutrition" , Thomas Edison



On Oct 7, 2015, at 4:15 PM, Joe Bray <jbray@moskowitzllp.com> wrote:




```
Joseph M. Bray
Attorney at Law

Moskowitz LLP
A Tax Law Firm
180 Montgomery Street, Suite 1950
San Francisco, CA 94104
Phone (415) 394-7200
Fax (415) 398-6501
jbray@moskowitzllp.com
```
                              2

U.S. v. Rowen et al, Exhibit 4
US-33092

www.moskowitzllp.com

This e-mail is covered by the Electronic Privacy Act, 18 U.S.C.
Sections 2510-2521, and is legally privileged.  The information
contained in this e-mail is intended only for the use of the
individual or entity to which it is addressed.   If the body of the
message indicates it has been sent to a client of Moskowitz LLP, the
information contained in this e-mail represents attorney-client
communications which are privileged.

**From:** Robert Rowen [mailto:drrowen@att.net]
**Sent:** Wednesday, October 07, 2015 4:09 PM
**To:** CFP(R) Mark W. Payne EA
**Cc:** Steve Moskowitz; Joe Bray; Anthony Diosdi
**Subject:** Re: 2014 Draft Returns

Also, why are you splitting the sale of the IRS seizure between us both? It was to
be Terri's only as she made application for all of it to be applied to her due to our
prenup. Please adjust accordingly
I don't get this sudden change.
Please explain.
R

Robert Jay Rowen, MD
drrowen@att.net

www.docrowen.com
http://www.youtube.com/user/RobertRowenMD
https://www.facebook.com/DrRobertJRowen

" The doctor of the future will no longer treat the human frame with
drugs, but rather will cure and prevent disease with nutrition",
Thomas Edison

On Oct 7, 2015, at 3:44 PM, Mark W. Payne, EA, CFP(R)
<mark@pfconsulting.net> wrote:

3

## Mark W. Payne, EA, CFP(R)

| | |
|---|---|
| **From:** | Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> |
| **Sent:** | Thursday, July 14, 2016 10:08 AM |
| **To:** | 'Robert Rowen' |
| **Subject:** | Info for personal taxes |

Dr. Rowen:

Hope all is well.  Jennifer is working on the list for the partnership return and I received your request for a more specific list for your personal returns.  Let's start with the following:

1. 2015 Forms K-1 for Behold a Pale Horse, LLC (these may not be available until early September)

✓ 2. Forms 1099-INT, 1099-DIV and 1099-B for any bank or investment accounts    *None*

3. Summary of estimated tax payments made for Tax Year 2015

✓ 4. Forms 1095-A, B or C for health insurance coverage.  *Rec'd*

✓ 5. Total for health insurance premiums paid.  *Rec'd*

✓ 6. Summary of sales of any capital assets   *None*

✓ 7. Summary of charitable contributions with separate totals for cash contributions and in-kind contributions    *None*

8. Summary of income tax payments made during 2015 for prior years (we deduct state income taxes on a cash-basis)

✓ 9. Summary of any other sources of income.  *None*

Thanks!  If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

U.S. v. Rowen et al, Exhibit 4

US-33975

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Robert Rowen <drrowen@att.net> |
| **Sent:** | Wednesday, October 07, 2015 4:00 PM |
| **To:** | CFP(R) Mark W. Payne EA |
| **Cc:** | Steve Moskowitz; Joe Bray; Anthony Diosdi |
| **Subject:** | Re: 2014 Draft Returns |

I was able to open the documents.
Next, we both had health insurance.

Last, Please talk with Moskowitz about Terri. The return says she owes a lot of money for the sale of assets, but 100% of the sale of her assets were retained by the IRS, so she really should not owe any money, and she will need some of it returned to pay state taxes.
I need to get whatever form for the EIN ASAP.

R


Robert Jay Rowen, MD
drrowen@att.net


www.docrowen.com
http://www.youtube.com/user/RobertRowenMD
https://www.facebook.com/DrRobertJRowen


" The doctor of the future will no longer treat the human frame with drugs, but rather will cure and prevent disease with nutrition" , Thomas Edison



On Oct 7, 2015, at 3:44 PM, Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> wrote:


Dr. Rowen:

Hope all is well.  With the gross proceeds figure from Moskowitz and the data you provided regarding basis, we updated the 2014 drafts to include the sale of the collectibles they seized (see attached; the password is the last four digits  of your social).  These drafts have also been forwarded to Joe Bray at Moskowitz for his review.  Please review the drafts and let me know if you have any changes.

A couple of follow-up items:

1.  Moskowitz sent you a Form SS-4 to request an EIN for the partnership.  Please sign it and send it back to them.  We can't produce the final partnership returns for 2013 and 2014 without the EIN.

1

U.S. v. Rowen et al, Exhibit 4

US-33179

2. Were you both covered for health insurance for 2014?  If so, we can remove the penalty.

3. Please sign and return the attached engagement letters.  We didn't receive the signed 2013 letters, so I have attached them again.  There are four to sign, one for each of you for 2013 and 2014.

If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

<Rowen Robert  2014 Personal DRAFT 2.pdf><Su Teresa 2014 Personal DRAFT 2.pdf><Rowen Su EST Basis Summary DRAFT 3.pdf><Rowen Robert 2014 Engagement Letter.pdf><Su Teresa 2014 Engagement Letter.pdf><Rowen Robert 2013 Engagement Letter.pdf><Su Teresa 2013 Engagement Letter.pdf>

U.S. v. Rowen et al, Exhibit 4

US-33180

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Robert Rowen <drrowen@att.net> |
| **Sent:** | Monday, June 12, 2017 11:33 PM |
| **To:** | Cpa Mark W. Payne EA |
| **Subject:** | tax returns |

Mark, I think you have what you need for our tax returns. I don't mind if they are not done by the 15th. I just need to know the ES we need to pay, and a rough idea of any balance for Terri for 2016. I think she might be behind some and I don't want to see interest added. Thanks.

R

Robert Jay Rowen
drrowen@att.net

" The doctor of the future will no longer treat the human frame with drugs, but rather will cure and prevent disease with nutrition" , Thomas Edison

1

U.S. v. Rowen et al, Exhibit 4

US-34246

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Robert Rowen <drrowen@att.net> |
| **Sent:** | Wednesday, June 14, 2017 10:11 AM |
| **To:** | Cpa Mark W. Payne EA |
| **Subject:** | Re: payments |

We have already paid on Q2, Terri paid 10k more than you suggested a few months ago. (40000)

R

Robert Jay Rowen
drrowen@att.net

" The doctor of the future will no longer treat the human frame with drugs, but rather will cure and prevent disease with nutrition" , Thomas Edison

On Jun 14, 2017, at 8:32 AM, Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> wrote:

Dr. Rowen:

Hope all is well.  Unfortunately, setting aside 50% of the net income to pay taxes is not an unreasonable number.  Depending upon a taxpayer's exact volume and mix of income, the marginal income tax rates for a California taxpayer can be as high as 55.8%.  I am hopeful that we will see some tax reform later this year.

For the Q2 payments, we don't want to use all of your available cash because we now know there will be balances due on the 2016 returns.  It's better to pay the underpayment of estimated tax penalty for being short on quarterly payments than to pay the late payment and interest penalties on the actual filing.  The underpayment penalty is just an interest calculation at around 4% per year.  The late payment and interest penalties, though, are more like 10% per year.

So, we need to balance the 2017 payments against the potential cash needed to pay off 2016.  I am tempted to recommend that you not make Q2 payments because of the potential size of the 2016 balances, but that may look bad on the record.  You should pay something.  Why don't you make the same payments as for Q1 - $30k and $8k for her, $6k and $1,200 for you.  That way you are making consistent payments.  We know that this is short and you will need to make up the difference with payments on 9/15/17, 1/15/18 and 4/15/18.  When we prepare the 2016 returns, I will factor in these payments with the 110% test and the Q3 and Q4 payments will be larger.  If you should have any questions, please do not hesitate to contact me.

Best regards,

Mark W. Payne, EA, CFP®
Payne Financial Consulting, Inc.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in

1

Rowen 1040

U.S. v. Rowen et al, Exhibit 4

US-34239

error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**From:** Robert Rowen [mailto:drrowen@att.net]
**Sent:** Tuesday, June 13, 2017 5:37 PM
**To:** Cpa Mark W. Payne EA <mark@pfconsulting.net>
**Subject:** payments

Mark, as horrible as it sounds, I have set aside 50% of what Terri has taken out in draws for taxes for safety reasons. Fifty percent sounds a lot like the old sharecroppers of the South and to me actually constitutes slavery.
That said, she has close to 80K to pay for last year and to catch up for this year.
The second half will be significantly slower than the first half. We have much more out of office time, less earnings from workshops we put on, and we make very little in December. Figure second half to be about 10% less than first half. It could be significantly less. Moskowitz just hit us with a significant bill not yet reflected.

So consider this and you can provide guidance for ES on Thursday. I will need to get in any payments by tomorrow since I'll not be able to do it on Thursday.
I have about 15K in my own account to catch up. We can come up with a little more from the operating account if we remain short
Thanks.
R.

U.S. v. Rowen et al, Exhibit 4
US-34240

## Mark W. Payne, EA, CFP(R)

| | |
|---|---|
| **From:** | Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> |
| **Sent:** | Wednesday, June 14, 2017 8:33 AM |
| **To:** | 'Robert Rowen' |
| **Subject:** | RE: payments |

Dr. Rowen:

Hope all is well.  Unfortunately, setting aside 50% of the net income to pay taxes is not an unreasonable number.  Depending upon a taxpayer's exact volume and mix of income, the marginal income tax rates for a California taxpayer can be as high as 55.8%.  I am hopeful that we will see some tax reform later this year.

For the Q2 payments, we don't want to use all of your available cash because we now know there will be balances due on the 2016 returns.  It's better to pay the underpayment of estimated tax penalty for being short on quarterly payments than to pay the late payment and interest penalties on the actual filing.  The underpayment penalty is just an interest calculation at around 4% per year.  The late payment and interest penalties, though, are more like 10% per year.

So, we need to balance the 2017 payments against the potential cash needed to pay off 2016.  I am tempted to recommend that you not make Q2 payments because of the potential size of the 2016 balances, but that may look bad on the record.  You should pay something.  Why don't you make the same payments as for Q1 - $30k and $8k for her, $6k and $1,200 for you.  That way you are making consistent payments.  We know that this is short and you will need to make up the difference with payments on 9/15/17, 1/15/18 and 4/15/18.  When we prepare the 2016 returns, I will factor in these payments with the 110% test and the Q3 and Q4 payments will be larger.  If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**From:** Robert Rowen [mailto:drrowen@att.net]
**Sent:** Tuesday, June 13, 2017 5:37 PM
**To:** Cpa Mark W. Payne EA <mark@pfconsulting.net>
**Subject:** payments

Mark, as horrible as it sounds, I have set aside 50% of what Terri has taken out in draws for taxes for safety reasons. Fifty percent sounds a lot like the old sharecroppers of the South and to me actually constitutes slavery.
That said, she has close to 80K to pay for last year and to catch up for this year.

1

U.S. v. Rowen et al, Exhibit 4
US-34241

The second half will be significantly slower than the first half. We have much more out of office time, less earnings from workshops we put on, and we make very little in December. Figure second half to be about 10% less than first half. It could be significantly less. Moskowitz just hit us with a significant bill not yet reflected.

So consider this and you can provide guidance for ES on Thursday. I will need to get in any payments by tomorrow since I'll not be able to do it on Thursday.
I have about 15K in my own account to catch up. We can come up with a little more from the operating account if we remain short
Thanks.
R.

U.S. v. Rowen et al, Exhibit 4
US-34242

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Robert Rowen <drrowen@att.net> |
| **Sent:** | Tuesday, July 12, 2016 10:10 PM |
| **To:** | CFP(R) Mark W. Payne EA |
| **Subject:** | Re: 2015 Tax Returns |

Mark, not sure what specifically you are wanting from us personally.
I sent you a list of auto miles and some other expenses.
I believe I sent you any information returns we got. Please let me know what you thing might be missing.

On another note, we got a bill from you and my office manager was shocked, and came to me asking if it was real. I told her to cut the check, but I must say I was also taken aback as we had not been informed of your rates for phone calls, which I have not abused regardless. (Perhaps I was informed but simply missed it. Please let me know). You had mentioned that Moskowitz was expensive. I find it interesting that I actually save lives and get really sick and desperate people back to health and my fees are the least of this particular "bunch"!!! I am thinking I had better raise my fees now to catch up to the CPAs and tax attorneys, or perhaps somewhere in the middle.

Regards,
R

PS Thanks for the section 83 review. What did you think of my brief on the 14th amendment which is what cast us all into this nightmare????


> On Jul 12, 2016, at 3:15 PM, Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> wrote:
>
>
> Dr. Rowen and Dr. Su:
>
> Hope all is well.  I forwarded an email to Jennifer regarding the data
> for the partnership tax return.  For your personal returns, please
> forward the data you have and I will review it and send you a list of
> missing items.  In addition, please sign the attached engagem

1

U.S. v. Rowen et al, Exhibit 4

US-33976

**Mark W. Payne, EA, CFP(R)**

| | |
|---|---|
| **From:** | Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> |
| **Sent:** | Friday, June 03, 2016 12:56 PM |
| **To:** | 'Joe Bray'; 'Steve Moskowitz' |
| **Subject:** | Dr. Rowen |

Joe and Steve:

Hope all is well.  I talked with Dr. Rowen this afternoon and we are running some numbers for him for his 2016 estimated income tax payments.  We also briefly discussed the old tax returns that are still outstanding (2010/2011/2012).  He said he hasn't seen the drafts yet that we prepared (these were sent only to you to review and forward).  He once again mentioned that their preference is for as much income as possible to be allocated to him versus Teresa for those years.  If I recall correctly, we split the practice income 50/50, but the other income is all his.  As a result, his balances due are much bigger than hers (although hers are not zero).  It seems like he is probably ready to move forward with those returns.  If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

U.S. v. Rowen et al, Exhibit 4

US-41585

1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**From:** Mark W. Payne, EA, CFP(R) [mailto:mark@pfconsulting.net]
**Sent:** Tuesday, September 22, 2015 9:45 AM
**To:** 'Robert Rowen' <drrowen@att.net>
**Subject:** RE: Touching base on 2014 taxes

Dr. Rowen:

Hope all is well.  Thank you for the summary, that is extremely helpful!  I have the sales inventory from Moskowitz, but the one I have doesn't include a per-item sales price.  At the moment, we have a total gross proceeds number based on the application of payments to your account (Moskowitz pulled this from your IRS Tax Transcript).  I will check with Joe Bray to see if we have something that lists a price per item.  That would help us estimate a basis amount for the heirloom piece.  Based on the information you've provided, I will construct an estimated basis schedule and forward it to you for your review.  If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.
1900 So. Norfolk Street, Suite 215 | San Mateo, CA 94403
650-372-0114 office | 650-372-0115 fax | www.pfconsulting.net

Confidentiality Statement: This e-mail notice and contents associated with it such as attachments, etc. may contain confidential and privileged information for the use of the designated recipients to whom this notice was sent. If you are not the intended recipient, you have received this email in error and any review, disclosure, dissemination, or copying of it or its contents is prohibited. If you have received this email in error, please notify Mark W. Payne at mark@pfconsulting.net.

Disclosure: Unless otherwise expressly indicated, any federal tax advice contained in this communication, including attachments and enclosures, is not intended or written to be used, and may not be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

**From:** Robert Rowen [mailto:drrowen@att.net]
**Sent:** Saturday, September 19, 2015 7:18 PM
**To:** mark@pfconsulting.net
**Subject:** Re: Touching base on 2014 taxes

Terri is claiming the assets as hers and acquired prior to our marriage. The gold coins the government got were approximately 500 apiece (per ounce basis). I have a book from 1999 referencing the sale value price of the coins at that time. Terri acquired them over several years during the 1990s.
So we would have to look at their inventory of sale, which Steve should have. All the gold coins can be estimated at about that price based on weight, though the smaller denominations would be more expensive.
The silver coins likewise should be valued at the price of silver in the late 1990s. about 5.70 per ounce. The sale of silver in September 2014 was when the price was 17.50., so silver about tripled.

2

The IRS seized a valuable family heirloom from her as well, a jade necklace, inherited from her family. I don't know what the IRS auctioned it for, and we cannot assess a cost basis. She considers it priceless as it was in her family for a long time. Hence, I'd like to see a high value attached to it.
There were some semi precious stones they got as well. I believe the cost basis of them was about 1000.

Terri will have taxes owing on the sale, obviously, however, the IRS credited MY account for the full amount of the sale, despite being presented with a valid pre-nup. Steve will have to work with you on that part of it, I guess. She doesn't have the money to pay the capital gains tax but she should be credited with payment since the property was hers and improperly applied to me.
THank you.
R




Robert Jay Rowen, MD
drrowen@att.net


www.docrowen.com
http://www.youtube.com/user/RobertRowenMD
https://www.facebook.com/DrRobertJRowen


" The doctor of the future will no longer treat the human frame with drugs, but rather will cure and prevent disease with nutrition" , Thomas Edison




On Sep 17, 2015, at 9:49 AM, Mark W. Payne, EA, CFP(R) <mark@pfconsulting.net> wrote:


Dr. Rowen:

Hope all is well!  We haven't talked directly before, but I know you have discussed our firm with Steve Moskowitz at Moskowitz LLP.  Steve and I have worked together on cases for the last several years.  He brings me in when there is the possibility of the government disqualifying the signing preparer from the audit part of a case.

I know you are out of the office until next week, but I wanted to reach out to discuss the 2014 drafts.  Joe and Kristen at Moskowitz sent me the information regarding the asset sale in 2014 and requested that it be included with a second draft.  I know you don't have a firm basis number for these assets, but I don't like using zero for such sales.  If you can tell me approximately when you acquired these items, perhaps we can estimate the basis and disclose the estimate on the returns.  Please let me know.  If you should have any questions, please do not hesitate to contact me.

Best regards,

MARK W. PAYNE, EA, CFP®
PAYNE FINANCIAL CONSULTING, INC.

U.S. v. Rowen et al, Exhibit 4

US-41587

## Estimated Basis Summary for Asset Seizure Sale
**Su, Teresa**

Est Price of Gold Per Ounce:      $500.00
Est Price of Silver Per Ounce:      $5.70

*Gold/silver coin content per www.usacoinbook.com*
*and www.coinflation.com for non-bullion coins:*

| Face Value | Metal | Content | Metal Value |
|---|---|---|---|
| $0.10 | Silver | 0.0723 | $   0.41 |
| $0.25 | Silver | 0.1809 | 1.03 |
| $0.50 | Silver | 0.3617 | 2.06 |
| $1.00 | Silver | 0.7735 | 4.41 |
| $2.50 | Gold | 0.1344 | 67.20 |
| $5.00 | Gold | 0.2419 | 120.95 |
| $10.00 | Gold | 0.4838 | 241.90 |
| $20.00 | Gold | 0.9676 | 483.80 |

*Bullion Coins:*

| Face Value | Metal | Content | Metal Value |
|---|---|---|---|
| $25.00 | Gold | 0.5000 | 250.00 |
| $50.00 | Gold | 1.0000 | 500.00 |

U.S. v. Rowen et al, Exhibit 4

US-41588

# United States v. Rowen et al.

# Case No. 19-cr-486-CRB

# Exhibit 5



### DEPARTMENT OF THE TREASURY
### Internal Revenue Service
### Criminal Investigation

## Memorandum of Interview

---

**Investigation #:** 1000267433
**Investigation Name:** ROBERT JAY ROWEN

**Location:** 450 Golden Gate, 11th Floor
San Francisco, CA 94102

**Date:** July 18, 2019
**Time:** ~11:06am-12:50pm
**Participant(s):** Mark Wayne Payne, Certified Public Accountant
Davin Funt, Special Agent
Kendl Tovey, Special Agent
Cynthia Stier, Assistant United States Attorney

On the above date and time, Agents Davin Funt (Funt) and Kendl Tovey, and Assistant United States Attorney (AUSA) Cynthia Stier (Stier) introduced themselves to Mark Wayne Payne (Payne) as Special Agents with Internal Revenue Service—Criminal Investigation, and an AUSA. Funt had previously served a Grand Jury Subpoena to Payne and conducted interviews previously. Stier told Payne she was conducting an investigation of ROBERT ROWEN (ROWEN) and TERESA BELLE SU (SU). Payne provided the following pertinent information:

1.  Mark Wayne Payne has records for years 2016 and 2017 for ROBERT ROWEN, TERESA BELLE SU, and THE PRACTICE. Payne has not provided these but they are available.

2.  Payne asked if he was a target of an investigation. Stier told Payne he was not. She wanted to speak with Payne as a witness to the investigation as Payne prepared returns for ROWEN, SU and THE PRACTICE. Stier told Payne he has the right to have an attorney present for the interview if he wants. Payne told Stier he reviewed his documents regarding the case and feels confident he doesn't need an attorney.

3.  Payne's first contact with ROWEN and SU was via a referral from Steve Moskowitz (Moskowitz). Payne only has a professional relationship with ROWEN and SU to prepare the returns. Payne is referred clients from Moskowitz because while client's pay for legal advice from Moskowitz, they don't want to pay him the high accounting fees.

4.  Payne has prepared federal tax returns for ROWEN, SU, and the partnership of THE PRACTICE for years 2013 to 2017.

5.  Payne didn't discuss the Married Filing Separate choice with ROWEN or SU. This was discussed with Moskowitz.

U.S. v. Rowen et al, Exhibit 5

US-41566

6.  Payne made drafts of returns for 2010, 2011 and 2012. Moskowitz did not want them filed; Payne thought they should have been filed.

7.  Payne never discussed a casualty loss with ROWEN or SU. They did discuss a seizure of gold coins.

8.  Payne has never met ROWEN in person. They communicate via email or phone.

9.  Moskowitz referred ROWEN to Payne in June of 2015. Initial contact with ROWEN was over the phone. Stier asked Payne if he was aware of a tax liability for ROWEN. Payne said he was told by Moskowitz that ROWEN had problems that may result in criminal problems by the Internal Revenue Service (IRS) but Payne did not discuss this with ROWEN.

10. Payne believes he must have talked about  a problem with the IRS since he knew assets were seized for a liability. Payne believes Moskowitz told Payne it was ROWEN's liability.

11. Payne's working relationship with Moskowitz was originally regarding FBAR and Kovel Letter cases. Almost all cases from Moskowitz had tax problems, i.e. tax liabilities, or were FBAR cases. Sometimes they were non-filers.

12. Documentation provided by ROWEN and SU consisted of author income for one year. Years 2013 and 2014 income was estimated due to bad records. Years 2015, 2016, and 2017 were more accurate.

13. The current bookkeeper is Anja Seitz. She makes common bookkeeping errors from a Certified Public Accountant's (CPA) standpoint, as opposed to egregious or unprofessional errors.

14. Payne said Jennifer Christianson doesn't sound familiar. Stier reviewed prior interview notes with Payne. Payne said he would check his records and get back to Stier.

15. ROWEN provided QuickBooks printouts for 2013 and 2014 but Payne could not entirely rely on them. Payne was not given an electronic version. Payne added $50k of income to these records on the tax return.

16. Payne tells clients to deposit all cash. Payne knew cash was seized from ROWEN during the gold coin seizure. He did not ask where the cash came from and does not know if the extra $50k in paragraph 15 was related to cash.

17. Payne does not know when ROWEN and SU married. Moskowitz told Payne there is a pre-marital agreement, but Payne has never seen it.

18. Stier asked what was the name of THE PRACTICE. Payne said currently the

U.S. v. Rowen et al, Exhibit 5

US-41567

entity is listed as ROBERT ROWEN and TERESA SU, A PARTNERSHIP.

19. Payne advised ROWEN if they file as Married Filing Separate, they must report the business as a partnership on Form 1065.

20. In 2017 there was more Cost of Goods Sold reported due to discussions between Payne and ROWEN regarding when sales are taxable, and about sales tax. ROWEN sells supplements for holistic purposes.

21. Payne started getting information for payroll returns in 2015. THE PRACTICE had 13 employees in 2015.

22. The 80-20% partnership split came from Moskowitz. Payne sent ROWEN and SU to an attorney to draft a partnership agreement.

23. Stier asked Payne if the 80-20% split was regarding who saw patients? Payne said no, he based the split on how much money was coming out of THE PRACTICE, and saw it was 80% to SU and 20% to ROWEN.

24. Stier asked if ROWEN saw the majority of patients and yet 80% of the money was going to SU, why was that. Payne said Guaranteed Payments would be an adjustment to avoid touching the capital account.

25. Stier asked why in 2013 and 2014 THE PRACTICE was a 50-50% split. Payne said there was no partnership agreement for those years. California is also a community property state.

26. Payne knew about the IRS seizure of assets because ROWEN provided Payne a list of seized assets given to ROWEN by the IRS. The 2014 Form 1065 return for THE PRACTICE was prepared in December of 2015, but filed in 2016. Returns for years 2010, 2011 and 2012 were prepared in January of 2016 but not filed at Moskowitz's advice. Moskowitz said the 2014 tax returns could be filed.

27. Regarding the seizure of gold coins and assets by the IRS in March of 2014, Payne's initial draft presented the untitled assets as a 50-50% split between ROWEN and SU because of community property laws. Moskowitz did not like the 50% split and said the property was mostly SU's. Payne relied upon ROWEN's comments that the gold coins belonged to SU in order to prepare the 2014 tax returns for ROWEN and SU.

28. There was lots of emails back and forth with Moskowitz on determining how to deal with the gold coins.

29. Stier asked Payne, assuming ROWEN sees 95% of the patients and uses THE PRACTICE's income to purchase gold coins, wouldn't the gold coins be ROWEN's? Payne said $900k in gold coins was seized. ROWEN did not report $900k of earnings a year. Some of the money used to buy gold coins may have

been from earlier years.

30. Basis of the gold coins was estimated to be $377k, and this was presented with a disclosure on the 2014 returns. $803k was applied as an estimated payment for SU.

31. At this point in time Stier presented emails from Payne and ROWEN (Ex. 1). Payne said it was represented to him by ROWEN that SU acquired the gold coins in the 1990's.

32. Stier asked Payne if ROWEN had the assets to pay ROWEN's taxes owed to the IRS. Payne said ROWEN could have sold THE PRACTICE. There was also the $800k in assets the IRS seized. There was no indication of any large investments by ROWEN.

33. ROWEN earned income as reported on a corporation return for LOTUS MANAGEMENT (LOTUS). This was earned from authorship. This income was not split between ROWEN and SU.

34. For years 2015-2017, ROWEN and THE PRACTICE was more compliant as there was more money reported. Payne does not know much ROWEN's tax liability was.

35. The handwritten notes on Exhibit (Ex.) 1 is Payne's. Payne writes notes on emails and notepaper which are respective to his current day's appointments with clients.

36. At this point and time, Stier presented Ex. 2. (Notes dated 11/16/15). Line 3 was in reference to an email or a phone call from ROWEN. Stier asked who took the property tax deduction? Payne said none were deducted. Payne asked Bob Vale about it (referenced in Ex.4, 5, and 6).

37. Stier asked Payne about the $50k listed on the pre-marital agreement since it matches $50k added to either the 2013 or 2014 return. Payne said $50k is a usual number he uses for the value of assets in the home of taxpayers.

38. Stier presented Ex. 7 and 8 and the pre-marital marriage addendum ROWEN submitted to the IRS for Payne to inspect. When Payne reviewed the pre-martial addendum, Payne's expression changed to a lop-sided (one-sided) smile and let out an audible, "Hmmph." Payne said he does not really believe that addendum, but he does not have proof that it is bogus. Payne has never seen that addendum until today.

39. The gross number on the 2014 returns for ROWEN and SU regarding the seized assets came from Moskowitz.

40. At this point and time, Stier presented Ex's. 9 through 12. Ex. 12 was notes from a phone call discussing projections for the year, how much they thought

the business would make to determine estimated payments.

41. Ex. 13 and 14 related to Ex. 12. SU already paid 80k to the IRS, ROWEN did not pay anything, ROWEN was told to pay $12,500.

42. Regarding Ex. 15, Payne doesn't know why 2010 – 2012 returns were not filed.

43. Funt asked Payne in 2014, if Payne knew ROWEN had tax liabilities, why was the seizure amount listed as a prepayment for 2014? Payne said the IRS should have issued a notice saying the prepayments don't match and this would have been discussed in Tax Court.

44. Funt asked Payne if ROWEN has said anything that was a misrepresentation? Payne said in 2013 and 2014, the QuickBook files were missing P & L, and there were miscategorizations.

Funt, Kendl Tovey and Stier thanked Mark Wayne Payne for his cooperation, time and assistance on this matter and he was escorted out of the United States Attorney's office space at the time indicated above.

I prepared this memorandum on August 22, 2019, after refreshing my memory from notes made during and immediately after the interview with Mark Wayne Payne.

Davin Funt
Special Agent

Kendl Tovey

U.S. v. Rowen et al, Exhibit 5

US-41570

Sandeep Singh (CSB 321995)
STONEBRIDGE COUNSEL
1990 N. California Blvd., Suite 830
Walnut Creek, CA 94596
Ph: (925) 255-0121
Fax: (925) 322-6216
sandeep@stonebridgecounsel.com
Attorney for Defendant TERESA SU

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No.:  19-cr-486-CRB |
| Plaintiff, | |
| v. | |
| ROBERT ROWEN AND TERESA SU, | |
| Defendants. | **[PROPOSED] ORDER** |

The Court having considered Defendant Teresa Su's Motion for Severance, the government's Opposition thereto, and any reply submitted in support thereof, IT IS HEREBY ORDERED that Defendant Teresa Su's Motion is GRANTED and her trial is severed from co-defendant ROBERT ROWEN.

**AND IT IS SO ORDERED**

Date:_____          _____
                              Honorable Charles R. Bryer
                              United States District Court Judge

U.S. v. ROBERT ROWEN, et al., 19-CR-486-CRB
[PROPOSED] ORDER

1

# CERTIFICATE OF SERVICE

Counsel for TERESA SU hereby certifies that on this date copies of the attached documents were served on all parties of this case.

I declare under the penalties of perjury under the laws of the State of California that the foregoing is true and correct

Executed on_____, 2020, at Walnut Creek, California.


__/s/ Sandeep Singh_____
Sandeep Singh